UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
------------------------------------------------------

In re

    ANDREA C. DANIEL-SANDERS,                                 09-10695 B

                                  Debtor                         <u>DECISION & ORDER</u>

------------------------------------------------------

                          Peter D. Grubea, Esq.
                          482 Delaware Avenue, 2nd Floor
                          Buffalo, New York 14202
                          Attorney for the Debtor

                          Albert J. Mogavero, Esq.
                          110 Pearl Street, 6th Floor
                          Buffalo, New York 14202
                          Chapter 13 Trustee

Bucki, Chief U.S.B.J., W.D.N.Y.

      The present dispute involves the treatment of automobiles in a Chapter 13 Plan. At issue is whether a debtor may use Chapter 13 to retain multiple vehicles and whether her plan must compensate for the luxury character of a car loan.

      Andrea Daniel-Sanders filed a petition for relief under Chapter 13 of the Bankruptcy Code on February 25, 2009. As reported in schedules filed with her petition, the debtor is a single mother who resides with three young children. Presently, Ms. Daniel-Sanders maintains two jobs, the first as a full-time nurse practitioner and the second as a part-time nurse manager. Together, these positions account for a gross monthly salary of $9,629. In addition, she reports rental income of $402 per month.

      The debtor's primary assets are a house with no non-exempt equity and two automobiles. The first car is a 2004 Honda Odyssey that the debtor values at $10,949, and which is encumbered by a loan with a principal balance of $9,368.53. The second is a 2007 Ford 500. Valued at $12,730, this later vehicle secures an outstanding obligation to

Wachovia Dealer Services in the amount of $27,737.44. Because Daniel-Sanders purchased the Ford 500 within 910 days of her bankruptcy filing, however, the so-called "hanging paragraph" of 11 U.S.C. §1325(a) prohibits any reduction of the allowed secured claim. Moreover, this prohibition extends to the entire secured obligation, even though it incorporates both the purchase price of the Ford 500 and the "roll-over" of pre-existing indebtedness. *In re Peaslee*, 585 F.3d 53 (2nd Cir. 2009).

Ms. Daniel-Sanders now proposes a plan requiring bi-weekly payments of $661 to the trustee over the course of 60 months. She *calculates* that these payments will total $85,930, and that they will suffice to discharge the two auto loans and to effect a 25 percent distribution to all unsecured creditors. The Chapter 13 trustee opposes confirmation on two grounds. Noting that the debtor resides in a household with only one licensed driver, the trustee challenges the need for two automobiles. He argues, therefore, that the debtor should increase the distribution to unsecured creditors by the amount proposed for payment on the second car loan. Secondly, the trustee contends that the obligation to Wachovia Dealer Services is a luxury expense that unfairly diminishes the percentage of payment to unsecured creditors. Ms. Daniel-Sanders responds that her circumstances justify ownership of a second car, and that the auto loans constitute reasonable and appropriate expenses under the tests of 11 U.S.C. § 707(b)(2)(A).

Expensing the Cost of Multiple Automobiles

Section 1325 of the Bankruptcy Code states the requirements for confirmation of a plan in Chapter 13. Subdivision (a) of this section provides that the court shall confirm a plan if it satisfies each of nine specific conditions. Subdivision (b) then identifies circumstances that will preclude confirmation, in the event that either the trustee or an unsecured creditor objects.

The debtor's argument focuses upon a defense to any objection that the trustee might raise under 11 U.S.C. § 1325(b). With respect to plans providing less than full

repayment of unsecured creditors, this subdivision essentially requires that the debtor pay into the plan the amount of his or her "projected disposable income" during the applicable commitment period.  Because Andrea Daniel-Sanders earns more than the state's median family income for a family of four individuals, 11 U.S.C. § 1325(b)(4) establishes a commitment period of five years.  Thus, the debtor must pay into her plan all of the projected disposable income that she derives during that five year period.

Subject to limitations not here relevant, 11 U.S.C. § 1325(b)(2) defines "disposable income" as the debtor's current monthly income less amounts reasonably necessary to be expended "for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed."  For purposes of this definition, 11 U.S.C. §1325(b)(3) provides that sections 707(b)(2)(A) and (B) of the Bankruptcy Code will determine "amounts reasonably necessary to be expended."  Pursuant to section 707(b)(2)(A)(ii)(I), reasonable expenses include those amounts specified under "National Standards and Local Standards," as issued by the Internal Revenue Service.  The debtor contends that the applicable standards allow her to expense the cost of two automobiles, and that their allowance results in a disposable income that is significantly less than the amount of her proposed payment into the Chapter 13 plan.

Section 7122 of the Internal Revenue Code (26 U.S.C. § 7122) establishes statutory authority for the compromise of tax obligations.  In particular, section 7122(d)(1) directs that the Secretary of the Treasury "shall prescribe guidelines for officers and employees of the Internal Revenue Service to determine whether an offer-in-compromise is adequate and should be accepted to resolve a dispute."  Further, section 7122(d)(2)(A) provides that "[i]n prescribing guidelines under paragraph (1), the Secretary shall develop and publish schedules of national and local allowances designed to provide that taxpayers entering into a compromise have an adequate means to provide for basic living expenses."  These schedules of national and local allowances are then used to determine "reasonable

expenses" for purposes of calculating disposable income that a debtor must use to fund a plan in Chapter 13.

As of the date on which the debtor filed her bankruptcy petition, the IRS standards allowed monthly transportation expenses of $235 for the cost of operating an automobile and $489 as a reasonable cost of a car's lease or purchase.[1] In preparing her calculation of disposable income (Official Form 22C), the debtor deducted these expenses for each of her two cars. Thus, she applied transportation costs of $724 per car, for a total monthly deduction of $1,448. As indicated on Form 22C, the allowance of these expenses operated to reduce the debtor's disposable income to only $3 per month. However, if the debtor were allowed to expense only one automobile, her monthly disposable income would rise to $727, and 11 U.S.C. § 1325(b)(1) would compel a higher distribution to unsecured creditors.

The national and local expense standards of the Internal Revenue Service do not establish any firm rules regarding the number of vehicles that the debtor may expense. For example, in its presentation of Local Standards for Transportation, the IRS website states that "[t]he ownership costs provide maximum allowance for the lease or purchase of up to two automobiles, if allowed as a necessary expense. *A single taxpayer is normally allowed one automobile.*"[2] Although the standards might "normally" allow Andrea Daniel-Sanders to expense only one automobile, special circumstances may justify a second vehicle.

In the present instance, the debtor's household includes one working adult and three minor children ranging in age from 2 to 10. The debtor is unmarried and lives apart from the father of her children. The father is himself a debtor in his own proceeding in Chapter 13, and earns substantially less income than the debtor. Neither parent pays child support to the other. Instead, they have agreed to an arrangement whereby the father essentially

---

[1] The Department of Justice publishes these standards periodically on the website for the United States Trustee Program, at http://www.justice.gov/ust/eo/bapcpa/20081001/bci_data/IRS_Trans_Exp_Stds_NE.htm.

[2] http://www.irs.gov/businesses/small/article/0,,id=104623,00.html (emphasis added).

cares for the children during the time when the debtor is working at either of her two jobs. Because these child care responsibilities include frequent transportation of the children, Ms. Daniel-Sanders has further agreed to provide a reliable vehicle for the father's use. Hence, she argues the need for a second car.

The trustee correctly asserts that in most instances, for purposes of determining disposable income, a single debtor may expense only one automobile. In the present instance, however, the debtor has adequately demonstrated that a second vehicle is reasonably needed to fulfill child care responsibilities. Essentially, the second automobile enables the debtor to avoid the expenses of daycare and after school care. By facilitating suitable arrangements for child care, the second car also enables the debtor to maintain a second job. Accordingly, under the unique circumstances of this case, the court will allow the debtor to expense a second vehicle, for purposes of calculating disposable income.

### Good Faith Requirements

To obtain confirmation of a Chapter 13 plan, debtors must fulfill a number of statutory conditions, only one of which is the disposable income requirement of 11 U.S.C. § 1325(b)(1). Even when a debtor proposes to commit her "projected disposable income" toward the funding of a plan, she creates no safe haven from compliance with every other provision of section 1325 of the Bankruptcy Code. In particular, I agree with the holding of *In re LaSota*, 351 B.R. 56 (W.D.N.Y 2006), that projected disposable income will not necessarily constitute a payment sufficient to satisfy the mandate of good faith in section 1325(a)(3).

Section 1325(a) of the Bankruptcy Code states that "the court shall confirm a plan if . . . (3) the plan has been proposed in good faith and not by any means forbidden by law." The Chapter 13 trustee contends that the proposed plan lacks good faith, in that it allows the debtor to incur the luxury expense of her second car, all to the detriment of unsecured creditors. Under the special circumstances of the instant case, for the same reasons that permit Ms. Daniel-Sanders to expense two automobiles for purposes of the projected

disposable income test, this court finds no lack of good faith in the mere retention of a second car.  Rather, the issue of concern is whether the cost of satisfying the outstanding car loans will exceed the limits of reasonableness, to the effect of compromising a good faith distribution to unsecured creditors.

Repayment of secured debt will reduce the funds available for distribution to unsecured creditors.  Consequently, an unreasonably large amount of secured debt may unfairly impact other claimants.  In such situations, the satisfaction of excessive secured debt will constitute a luxury expenditure that may necessitate an appropriate accommodation for the rights of unsecured creditors.  Here, the trustee makes no objection with respect to the 2004 Honda, which now secures an outstanding obligation of less than $10,000.  He instead challenges the proposal to satisfy a loan secured by the 2007 Ford 500, in the amount of $27,163.  In the trustee's view, this claim far exceeds the fair value of a reasonable means of transportation.

In satisfying the requirements of good faith, a Chapter 13 plan may not allow luxury expenses that impact adversely upon the rights of unsecured creditors.  Consequently, a debtor must choose either to surrender the collateral that necessitates the luxury expense, or to make other offsetting adjustments to her budget.  For example, in those instances where 11 U.S.C. § 1325(b)(1)(4) allows a commitment period of three years, the debtor may extend the length of the plan.  Alternatively, the debtor may commit to her plan the savings that accrue from other extraordinary sacrifices.  In all instances in which the debtor wishes to retain the collateral, she must propose a plan that somehow distributes to unsecured creditors the same amount that they would receive if the debtor had discontinued the luxury component of her obligation.

In the context of current market conditions, the repayment of an auto loan in the amount of $27,163 would clearly represent a luxury expense.  Presently, the debtor's proposed plan contemplates payments in excess of projected disposable income.  The issue therefore becomes whether that excess will suffice to compensate unsecured creditors for

Case 1-09-10695-CLB    Doc 34    Filed 12/30/09    Entered 01/11/10 15:17:09    Desc Main
Document      Page 6 of 8

any luxury component of the automobile loan.  Accordingly, for purposes of confirmation, we must set a value to mark the limits of reasonableness and the initial indication of luxury excess.

The Bankruptcy Code establishes fundamental principles of case administration, but does not impose any absolute standard for the reasonable cost of auto acquisition.  Indeed, special circumstances may justify greater expenditures, such as might finance the acquisition of a car for someone with physical infirmities.  Nonetheless, the present case indicates the need for guidelines of general use in the determination of luxury expenditures.

As a general rule, this judge for many years has assigned luxury status to automobile loans having an outstanding balance in excess of $15,000.  Although the trustee asserts that the disputed auto loan represents an unreasonable expense, he joins debtor's counsel in urging a review of the current standard.  Debtors should appropriately expense the reasonable cost of a serviceable automobile, but not costs that substantially exceed the typical expenditures of others in the community.  For this reason, I have looked to statistics issued by the Research and Innovative Technology Administration of the Bureau of Transportation Statistics.  This agency reports that for 2008, the average cost for the acquisition of a vehicle, whether new or used, was $12,907.[3]   In my view, a variance from this amount by as much as twenty percent might be reasonable.  If one multiples $12,907 by 120 percent, we derive a reasonable expense of $15,488.40.  For ease of application, I will round this value upward to $16,000.  Generally, therefore, I will treat any car loan in excess of this sum as a luxury expense.

In the present instance, the court will allow the reasonable cost of a second automobile.  Unfortunately, the existing car secures an obligation greater in amount than what a debtor should reasonably expense.  If she prefers, Ms. Daniel-Sanders may surrender the 2007 Ford 500 and seek authority to replace it with a vehicle costing no more

---

[3]*See* Table 1-17 at
http://www.bts.gov/publications/national_transportation_statistics/html/table_01_17.html.

than $16,000. If she resolves to retain her existing vehicle, however, the debtor must assure that repayment of the luxury component of her auto loan will not diminish the distribution that unsecured creditors would otherwise receive.

In 2005, Congress amended 11 U.S.C. §1325(a) to prohibit the "strip-down" of a purchase money security interest in an automobile acquired within 910 days of a bankruptcy filing. But for this amendment, the debtor's secured obligation could have been reduced to the value of the automobile, so that she would not now need to justify payment of an excessive loan balance. The current statute, however, imposes an additional financial obligation on those debtors who may wish to keep any vehicle that is covered by the amendment. The law establishes no duty to retain an automobile. But if the debtor chooses to keep a car, she may not surreptitiously transfer to unsecured creditors the consequences of satisfying an excessive auto loan.

The trustee's objection is overruled with regard to the allowance of expense for two automobiles, but is partially sustained to the effect that any auto loan will be treated as a luxury expense to the extent that it secures an obligation in excess of $16,000. Nonetheless, the debtor proposes a not-insubstantial distribution of 25 percent to unsecured creditors. At this time, neither debtor nor trustee has had opportunity to demonstrate whether the proposed plan can satisfy the requirements for confirmation as set forth herein. Accordingly, the court will not confirm the plan at this time, but will consider this matter further at a hearing scheduled for noon on January 5, 2010.

So ordered.

Dated:   Buffalo, New York          /s/      CARL L. BUCKI
         December 30, 2009          Carl L. Bucki, Chief U.S.B.J., W.D.N.Y.